IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARY ANN LOVELL                                                           PLAINTIFF

v.                             Case No. 4:17-cv-4101

HOPE SCHOOL DISTRICT                                         DEFENDANT

### **MEMORANDUM OPINION**

Before the Court is an Amended Motion for Summary Judgment filed by Defendant Hope School District ("Hope"). ECF No. 26. Plaintiff Mary Lovell, representing herself in this action, has filed a response (ECF No. 42) and amended response (ECF No. 44) in opposition to Hope's motion.[1] Hope has filed a reply. ECF No. 46. The motion is ripe for the Court's consideration. For the reasons that follow, the Court finds that Hope's Amended Motion for Summary Judgment should be granted.

### **I. BACKGROUND**

As an initial matter, the Court notes that Lovell has failed to file, pursuant to Local Rule 56.1(b), a statement of the material facts as to which she contends a genuine issue exists to be tried. Therefore, the facts as set forth by Hope in its Statement of Facts Not in Dispute (ECF No. 27) are deemed admitted and are the undisputed facts of this case for purposes of this motion. *See* U.S. Dist. Ct. Rules Ark., LR 56.1 (b)-(c) ("All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party.").

---

[1] Lovell states in her response that Hope "contest[s] only the adequacy of the Complaint" and that she is responding as if Hope's summary judgment motion "was a motion to dismiss for failure to state cognizable claims." ECF No. 44, p. 9. Lovell is mistaken because Hope has filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56 and not a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Lovell is a 75-year-old black female[2] who began working for Hope as a teacher at Yerger Middle School in 2002. During the 2016-2017 school year, Lovell was assigned to teach only Literacy Navigator classes. Literacy Navigator is a curriculum program designed to give additional support to students whose reading comprehension is below grade level. Literacy Navigator is a teacher-led program and teachers are provided a script to follow each day. The script is not designed to be modified by the teacher. Literacy Navigator intends for all students to work at the same pace and to follow the same schedule. Carla Narlesky, the school improvement specialist, trained Lovell on the components of Literacy Navigator.

In October 2016, Narlesky modeled a Literacy Navigator lesson in Lovell's class and instructed her to teach one lesson per day, to have the students complete one lesson per day, and not to have the students work at their own pace. In November 2016, Josclyn Wiley, Yerger's principal, observed Lovell and noticed that she taught from her own "note sheet," her students were not on task, and she was unprepared for class. Wiley directed Lovell to teach from the Literacy Navigator manual as scripted and to complete one lesson per day without changes to the curriculum. Wiley warned Lovell via letter that if Lovell disregarded the directives, further disciplinary action could be taken against her, including termination or non-renewal of her contract.

After Principal Wiley's observation, Assistant Superintendent Portia Jones observed Lovell's classroom and noted that students were disorderly, classroom procedures were lacking, and Lovell's instructional procedures were ineffective. Based on Jones's observations, Wiley instructed Lovell to establish classroom processes and procedures that would aid students in becoming engaged and would minimize off-task behaviors. Wiley again noted in a letter to Lovell

---

[2] Lovell was approximately 73 years old at the time the events pertaining to this lawsuit took place.

that disregarding the directives could lead to further disciplinary action. Lovell responded by letter, stating that Wiley's letter was a "false acclimation" of her professional character.

In November 2016, Narlesky, the school improvement specialist, observed Lovell's classroom and determined that she was not implementing Literacy Navigator as instructed. Narlesky noted that students were working independently in their workbooks and that Lovell was not teaching the lesson to the students as directed. She further noted that Lovell was providing the students with notes that were aiding the students in working independently at their own pace. In a letter to Lovell dated November 17, 2016, Narlesky directed that Lovell stop providing students with notes; that she complete the lessons as scripted by the teacher's manual; and that she work with students as directed by the Literacy Navigator script. Narlesky warned Lovell that failure to follow the directives could lead to further disciplinary action.

Lovell testified in her deposition that she could not use a single script for every class and that she believed her lesson plans, note sheets, and student agendas[3] were superior to the Literacy Navigator script. On November 29, 2016, Superintendent Bobby Hart and Principal Wiley met with Lovell regarding concerns about her classroom performance and the implementation of Literacy Navigator. Hart followed up the meeting with a memo in which he directed Lovell to follow the protocols of the Literacy Navigator program and to implement and carry out Wiley's directives.

Also, on November 29, 2016, Wiley and Michelle Bittle, Yerger's assistant principal, had a pre-observation conference with Lovell in which they expressed their concerns regarding Lovell's teaching methods. Wiley noted that Lovell had failed to complete the pre-observation questions prior to the conference and directed her to complete the questions by the end of the

---

[3] Wiley had informed Lovell via email that student agendas were not part of the Literacy Navigator program.

following day.  Wiley also recommended that Lovell complete a micro-credential, an exercise requiring Lovell to complete a written assignment and to video a lesson she taught.[4]  On November 30, 2016, Narlesky observed Lovell's classroom and found that the students were completing lessons out of order, were working at their own pace, talking over Lovell, and laughing at another student's work.  After the observation, Narlesky concluded that Lovell's students had received little or no academic instruction from Lovell during that semester.

In January 2017, Bittle created an intensive growth plan for Lovell.  Bittle presented the plan to Lovell, identifying specific goals and actions that she should take to achieve these goals.  On January 27, 2017, Wiley notified Lovell that she had not completed the micro-credential.  Lovell's explanation for not completing the assignment was that she could not log in to the system for submitting the micro-credential.  Wiley noted that Lovell never asked for help regarding her login problem, but Wiley nevertheless extended the deadline for submitting the assignment to February 6, 2017.

After observing Lovell's class on February 2, 2017, Narlesky noted that Lovell did not teach Literacy Navigator that day, that the lessons were not being completed in order, and that some lessons had been skipped.  Lovell explained that because the students had not followed the "one lesson per day" pace of Literacy Navigator during the Fall semester, they were having to catch up during the Spring semester.

On February 8, 2017, Wiley delivered a memorandum to Lovell regarding her failure to complete the micro-credential.  Wiley offered another extension of time to complete the micro-credential and stated that failure to complete it by February 16, 2017, could result in further disciplinary action, including but not limited to termination or non-renewal of her contract.  On

---

[4] The video would then be sent to a source outside the district, who would rate the video and provide feedback and advice to Lovell.

February 12, 2017, Lovell submitted a document that she referred to as a "report on micro-credentialing approach." She never submitted a video of herself teaching and thus never properly completed the micro-credential.

On February 13, 2017, Bittle observed Lovell's classroom and noted that Lovell was still not teaching Literacy Navigator according to the script and schedule. Further, Lovell's students had not completed a post-test as required by the curriculum.

When Lovell was asked if she allowed the students to work independently at their own pace, she responded that the students who caught on faster worked ahead and the students who worked slower fell behind. Of the twenty-three to thirty students Lovell taught each class period, she estimated that four or five students from each class period were completing one lesson per day as required by the curriculum. She estimated that the other students were completing an average of one or two lessons per week. Lovell also noted that three or four students from each class period were special education students who could not complete one lesson per day but could do enough partial work to "pass." Narlesky reviewed Lovell's students' workbooks and estimated that eighty-five percent of the workbooks were incomplete.

On February 23, 2017, Hart delivered a letter to Lovell, notifying her that he intended to recommend non-renewal of her contract. The listed reasons for the recommended non-renewal were poor performance, failure to comply with the written directives of supervisors, failure to otherwise perform the tasks required of Lovell's position, and failure to participate in the improvement process. Hart stated that, during the 2016-2017 school year, Lovell did not show improvement in her classroom instruction, continued to refuse assistance from Wiley and other administrators and personnel, refused to teach the Literacy Navigator curriculum as instructed, and showed no interest in participating in the improvement process.

On February 24, 2017, Lovell appealed Hart's non-renewal recommendation to the Hope

5

school board and later requested a public hearing before the school board. The Hope school board held a hearing on March 29, 2017, and upheld Hart's recommendation that Lovell's contract be non-renewed for the following school year. Thus, Lovell's contract was not renewed for the 2017-2018 school year.

In the instant lawsuit, Lovell brings claims against Hope for race, gender, and age discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Age Discrimination in Employment Act (ADEA). Hope argues that it is entitled to summary judgment on all claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

First, the Court will collectively discuss Lovell's race, gender, and age discrimination claims. Next, the Court will take up Lovell's hostile work environment claims. Last, the Court will address Lovell's purported retaliation claim.

A. Discrimination

To survive a motion for summary judgment on race,[5] gender,[6] and age discrimination claims, a plaintiff must either provide direct evidence of discrimination or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bone v. G4S Youth Servs, LLC*, 686 F.3d 948, 953 (8th Cir. 2012) (citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)); *Wierman v. Casey's Gen Stores*, 638 F.3d 984, 993 (8th Cir. 2011). Because Lovell has not offered any direct evidence of discrimination, the Court will analyze her claims under the *McDonnell Douglas*

---

[5] Race discrimination claims under 42 U.S.C. § 1983 and Title VII are evaluated under the same standard. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015). Further discrimination claims brought under Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden shifting framework. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014).

[6] The Court applies the same standard to gender discrimination claims arising under Title VII and § 1983. *DePriest v. Milligan*, 823 F.3d 1179, 1185 (8th Cir. 2016).

7

burden-shifting framework.

Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination. If a prima facie case is established, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse employment action. *Wierman*, 683 F.3d at 993. If the defendant can do so, the prima facie case is rebutted and no inference of unlawful discrimination is created, unless the plaintiff can produce sufficient evidence to create a genuine issue of material fact as to whether the articulated reason is pretext for unlawful discrimination. *Id*. To survive summary judgment, a plaintiff must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive. *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir. 2016) (citation and quotation marks omitted).

The Court will now apply the *McDonnell Douglas* framework to the instant case, beginning with the required elements for establishing a prima facie case of discrimination. Lovell must show the following: "(1) [she] is a member of a protected class; (2) was qualified; (3) suffered an adverse employment action; and (4) can provide facts that give rise to an inference of unlawful . . . discrimination' on the basis of a protected class status." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016) (quoting *Robinson*, 753 F.3d at 754). "To create an inference that the decision to terminate was based on unlawful discrimination, a plaintiff must show pretext by such evidence as an employer failing to 'follow its own policies' or treating 'similarly-situated employees in a disparate manner.'" *Id.* (quoting *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014)). A failure to establish even one element of a prima facie case defeats a Title VII discrimination claim. *Tatum v. Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2005).

Hope argues that Lovell fails to establish a prima facie case of discrimination based on any protected class status because she cannot show that Hope treated any similarly situated employees in a disparate manner. In her response to Hope's summary judgment motion, Lovell does not

8

identify any comparators. Thus, Lovell has not provided any evidence that an employee whose situation was similar to Lovell's was treated more favorably because of the employee's race, age, or gender.

Further, Lovell fails to establish a prima facie case of discrimination because she has not provided any evidence that she was "qualified" for her position, meaning that she was performing her job at a level that was meeting Hope's legitimate job expectations. *See Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343, 346 (8th Cir. 1997). Hope has offered evidence that Lovell refused to teach the Literacy Navigator program as directed and delayed submitting documents and videos during the improvement process. Lovell states that her classroom performance and her students' performance was exemplary, but she offers no evidence to support these statements.

Even assuming Lovell could establish a prima facie case of discrimination, Hope has articulated a legitimate nondiscriminatory reason for not renewing Lovell's contract—her failure to follow the directives of her supervisors. Specifically, Hope presented evidence that Hart decided not to renew Lovell's contract because of her poor performance, failure to comply with the written directives of her supervisors, failure to otherwise perform the tasks required of her position, and failure to participate in the improvement process. Lovell has not provided any evidence that this reason is pretextual. Accordingly, the Court must find that Hope is entitled to summary judgment on Lovell's race, gender, and age discrimination claims.

B. Hostile Work Environment

Hope argues that summary judgment is appropriate as to Plaintiff's hostile work environment claim. To prove a hostile work environment claim, Lovell must show the following: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment resulted from her membership in the protected class; and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment. *Blake v. MJ Optical*, 870

9

F.3d 820, 827 (8th Cir. 2017).[7]

Lovell asserts that Hope "overly managed the teaching procedures . . . to harass and intimidate her." ECF No. 1, ¶ 25. Further, she makes a general claim that she was treated differently than younger, white teachers and that she was required to meet a higher standard than other teachers. Lovell complains that her classroom was inferior to the classroom assigned to an unidentified younger teacher and that she did not receive as many preparatory periods as other teachers.

> A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment. Relevant factors for determining whether conduct rises to the level of harassment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011) (internal quotations and citations omitted). While Lovell alleges in her complaint that she was "overly managed" and implies that she was held to a higher standard than other teachers, "[e]vidence, not contentions, avoids summary judgment." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016) (quoting *Reasonover v. St. Louis Cty. Mo.*, 447 F.3d 659, 578 (8th Cir. 2006)). Lovell has not submitted any evidence to support her claim that she was subjected to unwelcome harassment. Further, she has submitted no evidence that the alleged harassment resulted from her membership in a protected class.

Even if the Court could find that some harassment did occur, Lovell has presented no

---

[7] The standards applied to evaluate a hostile work environment claim under Title VII are the same standards used to evaluate such a claim under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010) (citing *Ross v. Kansas City Power & Light*, 293 F.3d 1041, 1050 (8th Cir. 2002)); *Weger v. City of Ladue*, 500 F.3d 710, 717 n.4 (8th Cir. 2007).

evidence that the harassment was severe enough to affect the terms, conditions, or privileges of her employment. Accordingly, the Court must find that Hope is entitled to summary judgment on Lovell's hostile work environment claims.

C. Retaliation

Lovell's complaint states that on account of her race, gender, and age, she "has been afforded less favorable terms and conditions of employment with [Hope], as similarly situated persons outside of the protected class in violations of his [sic] rights and in retaliation for protesting unlawful treatment." ECF No. 1, p. 6. This is the only instance in which retaliation is mentioned in the complaint. It is unclear to the Court whether Lovell is attempting to make a retaliation claim against Hope. Lovell's complaint does not describe any alleged retaliatory conduct by Hope, and Lovell's Charge of Discrimination filed with the United States Equal Employment Opportunity Commission does not include a retaliation claim. ECF No. 1-3. Thus, the Court finds that any purported claim of retaliation is not properly before the Court, and the Court need not address this claim further for summary judgment purposes.

IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Amended Motion for Summary Judgment (ECF No. 26) should be and hereby is **GRANTED**. Lovell's claims are **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, on this 15th day of July, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge